Case No. 19 at 7040, Vipula v. Valambhia et al. Appellants v. United Republic of Tanzania et al. Mr. Renzi for the Appellants, Mr. Martin for the Appellees. May it please the Court. The text of the FSIA provides no basis for categorically denying jurisdiction to an entire group of cases. But that is exactly what the District Court did in holding that recognition actions are effectively a dead letter under the Commercial Activities Exception. Instead, the plain language of Clause 3 of the Exception requires a plaintiff at the jurisdictional stage to prove only three things. First, that the suit is based upon an act outside of the United States. Second, that the act be in connection with a commercial activity of the foreign sovereign elsewhere. And third, that it causes direct effects here in the United States. Clause 2 also requires only an act performed in the United States in connection with a commercial activity of the foreign sovereign elsewhere. The Valambhia suit satisfies both of these clauses. First, under Clause 3, the Valambhia's complaint is based upon an act outside of the United States, the entry of judgment in Tanzania. Tanzania admits that the judgment is the gravamen of the suit and a fact without which they will lose the recognition action. Therefore, I will focus on that particular act, although our brief details the bank's separate acts as well. Tanzania and the District Court misread the statute by treating this like a Clause 1 case, which must be directly based upon the commercial activity itself. Under Clauses 2 and 3, they require only an act that is merely in connection with a commercial activity elsewhere. And as the Supreme Court explained in Nelson, Congress manifestly understood the difference between those two things. The judgment is precisely such an act, and the act need not be commercial. In Weltover, the act was a sovereign act. It was a presidential decree, but it was made in connection with a commercial activity. And similarly, in the Court's recent per curiam decision last year in Naka versus Federal Republic of Nigeria, the act there was the Attorney General of Nigeria's sovereign act of sending a letter to the U.S. Department of Justice and referring the plaintiff to prosecution for prosecution in Nigeria. Those were sovereign acts, but they were in connection with a commercial activity that caused direct effects here. Supreme Court's read based upon pretty tightly. Why wouldn't we likewise read in connection with tightly? Well, Your Honor, there's no basis in the text for having a view of in connection with. It's restrictive. In fact, when the Supreme Court discussed that clause in Nelson, it discussed it in the terms of it's merely in connection with or related to. So it should be read under encino motor pars and subsequent cases. You should read statutory exemptions with a fair reading rather than a narrow reading unless there's some basis in the text to show otherwise. And there's nothing here that would indicate there should be a somehow limited view of in connection with. And this is clearly in connection with under any definition of the term, because we're talking about a judgment that was expressly referencing and based upon a commercial contract to sell military equipment. And under Weltover, that is a quintessential commercial act. A contract to buy Army boots that Weltover said would be a commercial activity. And is your claim relying on the Tanzanian government's accession to the irrevocable agreement? That isn't necessary. It is a fact that is alleged. And but the judgment itself is references the 1985 contract between Tel and the Tanzanian government. The Tanzanian government acceded to the irrevocable agreement that said that Mr. Valambia and his family were entitled to 45% of the funds due under that 1985 contract. And during the 86 to 89 period when payments were being made, where were the Valambias being paid? Based on the evidence, and this is again at the jurisdictional stage, we know that payments were made through a New York bank account, Tanzania's Federal Reserve Bank account of New York. I don't have any further information. There's nothing further in the record to, you know, exactly precisely identify which bank account it was paid to. But regardless, the allegations... Nor are there allegations that Mr. Valambia was living in the United States during that period? The allegations are that the Valambia family was definitely here and they moved here in 1981. And the judgment is payable to them as well as Mr. Valambia. Mr. Valambia, from what we see in the record, was in Tanzania and in the United States at various times. So he did have, and this jurisdictional discovery, if that is requested below, would reveal that he actually was a green card holder. And so very likely could have been in the United States when payments were made. But payments did not just stop in 1989. Subsequent opinions from the Tanzanian courts that are in the appendix state that the bank admitted that payments were made up until 1991. And thus they were, I'm sorry, 2001. And thus were made in connection with the judgment itself. They were after the judgment was, the first judgment was entered. And the payments were made directly in connection with that judgment. Why could your claim survive under our holding in Odiombo where the existence of the individual after the events given rise to the case in the United States wasn't enough to support the direct effect? This is not like Odiombo and other cases where a plaintiff subsequently has a claim and then subsequently moves to the United States. This, the Valambias were here since 1981 and from the moment. The children were here. The family, the wife and the children. But not the deceased. The deceased was here at various times, Your Honor, and traveled back and forth until Tanzania confiscated his passport and precluded him from further travel. The record does not reveal when that. He was a Tanzanian citizen, right? He spent most of his time in Tanzania. The record does not support a statement that he spent most of his time in Tanzania. Suppose he were a Tanzanian citizen and you agree under our precedent it wouldn't be sufficient that a Tanzanian citizen gets his judgment and then moves to the U.S., right? So, I mean, it just doesn't seem that different to me. The actual case, which is the Tanzanian citizen has a judgment and then he dies and the family members who happen to be in the U.S. succeed to his rights. From the moment the judgment was entered, it was in the name of Mr. Valambia and family. And that was based upon language in the irrevocable agreement that said he and his family would be entitled to 45%. So the moment it was entered, it was due to people who were living in the United States and became citizens as well in the United States. And whether Mr. Valambia himself was traveling back and forth at various times is irrelevant because the judgment was due to the family and remains due to the family independently of Mr. Valambia. So is it your position that the government, by agreeing to pay the family, has basically contracted in a way that would establish a direct effect wherever that family happened to live? It would be similar to that. This is not, and I would just note that we should be careful to recognize this is not a breach of contract action, but they definitely, there is no doubt that they agreed to pay the Valambia family. And the direct effects are found here in a number of ways. Again, as I mentioned, the Valambia family were here when the judgment was entered. It was due to them immediately upon entry. And Tanzania, as an immediate consequence of its activities, Tanzania transferred funds from its New York bank account to pay the Valambias, both before and after the judgment. And those payments after the judgment are definitely in connection with the judgment. And courts have similarly found direct effects based upon the failure to pay or return property to persons known to live in the United States. For example, the Dissepol case, as well as the past practice of making payments through a U.S. bank, the Trans-American case. Two individuals where they were making payments to them in the United States, and it's your burden to establish jurisdiction. And to the extent that the record doesn't establish where the payments were made out of Tanzania's New York account, isn't that your failing? No, Your Honor. Actually, the burden is on Tanzania to show that one of the exceptions does not apply. And we have done all that is required at the jurisdictional stage, which is simply to allege the elements under Clauses 3 and Clause 2. And to the extent jurisdictional discovery was required, Tanzania should have asked for that. And we just simply didn't have the opportunity, not having even gotten out of the gate, because the district court confused the Clauses 2 and 3 with thinking that this was essentially a Clause 1 case. And if you take that away and you look at Tanzania has admitted we have the gravamen of the suit is the judgment. And that it's a fact without which we will lose. So this case is definitely based upon the judgment. It's in connection with commercial activities. It expressly references those commercial activities, the commercial contract. And it causes direct effects here. But there's no doubt about where payment is to be made. And in addition, after Mr. Balambia died, the family continued to make court appearances in Tanzania demanding payment here. And I would also note, in terms of Odeombo's conclusion that a contract must necessarily contemplate the place of performance, Odeombo expressly limited its holding to breach of contract cases. It said in breach of contract cases, this is the rule. And it makes no sense to apply such a rule in a recognition action. Because a judgment generally doesn't give a place of performance. It is due, a judgment sets an amount certain that's due that the defendant must pay. And the plaintiff, if the defendant does not pay that amount voluntarily, the plaintiff may execute on that judgment. And they may do so wherever the defendant's assets are found. And they may domesticate a judgment elsewhere. So there really should not, that rule in Odeombo does not, is inapposite from our case where we've got a judgment payable to parties who have always been, since its entry, present in the United States, demanding payment in the United States. Past practice of making payments through a New York bank account. And I would also add that payments were to be made under the judgment in U.S. dollars. Can I ask, what about the garnishment? One of the orders you're seeking here is the garnishee order, right? Yes. And that one says the money is to be paid to the registrar of the court in Dar-el-Assam, right? Yes, Your Honor. Dar-el-Assam, right? So what about that? So that is at the execution stage. We have a judgment that's been disregarded. With respect to that particular order, you're seeking recognition of both. That order? Yes. Right. So as to that order, which directs payment in Tanzania. It does simply because Tanzania had failed to pay on the first judgment. And at the execution stage, it's not unusual for a court to come in and say, you're going to pay the court directly. It did not mean that the funds were not still due to the Bolombias. It was simply an administrative detail that the ---- But it's not with respect to direct and indirect. The direct payment is where it's paid directly. It may then go somewhere else. That makes it indirect. And that's not covered by the Foreign Sovereign Immunities Act provision, the third clause. It has to be a direct effect. It is. It's still a direct effect. The direct effect is it's paid in Tanzania. The indirect effect is maybe it will be then transferred somewhere else. No, Your Honor, because the Garnaschi order is executing on the 1991 judgment that directs Tanzania. It is payable to Mr. Bolombia and family. And simply because the court is having to go after Tanzania for failing to pay on that first judgment and directing it to pay it to an intermediary in the interim does not mean it's not payable to the Bolombia family. You've tried to distinguish the judgment from the contract. The judgment has no place of performance whatsoever. You just made that point. A judgment creditor can generally try to execute wherever. So what in the judgment is United States focused? And I see my time is up, but if I may answer, it is payable to parties. And those parties, just as in Decepol, the bailment contract did not specify a place of performance, but it was to be fairly inferred from the fact that the plaintiffs were living in the United States and demanding payment there. And similarly, this is the judgment. So there was a reason to think that the contract would be performed in the U.S.? And under our contract, the agreement that Tanzania acceded to, the judgment, I mean, the contract is payable to Bolombia and family. And the judgment, similarly, is payable to Bolombia and family. And this is not a breach of contract action where a place of performance rule would apply. And we simply are asking. So you're, by so arguing, you're disclaiming reliance on the accession to the irrevocable agreement, which says funds in favor of Bolombia wherever and whenever applicable. So the wherever there is not, in your view, key to your argument? I'm not disclaiming it. I think it's certainly a relevant fact, but it's not necessary, in my opinion, because this is not a breach of contract suit. But I do think that it is to the extent that the court believes that a place of performance rule would be necessary, which I don't think is called for by ODIAMBO, which applied to breach of contract cases, that that supports that payment was to be made. And Tanzania agreed to pay them wherever they were found, and they are found here. And they were paid through a New York bank with U.S. dollars. So it's not a surprise that they're to be paid here. So you had mentioned DICEPL, but as we said in ODIAMBO, we distinguished DICEPL because the direct effect there was tied to the fact that there was a bailment contract with specific performance and obligation to turn over the artwork to the United States. And what plays that role on your facts? Well, I believe that in DICEPL it was not only – it was either a return of the artwork or payment for the artwork would be due here. So necessarily it did contemplate a one or the other payment of the funds. I mean, the artwork, I think, was the preferred method. But, for example, if the artwork weren't available, you would compensate the plaintiff for that with the funds. Yes, I think as we characterized that in a more recent case in ODIAMBO, the key to the court's reasoning was that Hungary had promised to perform specific obligations in the United States. Thus, from the moment of contract formation, the United States was a contractually designated place of performance. And, Your Honor, Tanzania agreed to pay the Balambia family. They have been here since long before even the 1985 contract. So they've been here since 1981. They did agree. And to the extent the court believes such an agreement would be necessary in a recognition action, there's certainly the agreement, a past practice of paying here and – Did they pay here? That's not alleged. They paid out of a New York account. Out of a New York account. Correct, Your Honor. But jurisdictional discoveries could reveal exactly where payments were made. Did you seek jurisdictional discovery? No, we did not. But neither did Tanzania. Suppose instead of litigating to judgment in Tanzania on these facts, the family had brought a breach of contract action in a United States court and invoked the commercial activity exception. Would that case fall under A2? If the contract was entered with the Balambians. Same facts. Yeah. Contract with the family. I would think not. Well, you need an act in the United States and whether – by the foreign sovereign. So there you don't necessarily have an act in the United States unless you're accepting our – You would be within the four corners of the Lambia, right? It would be a breach of contract action and there would be no place of performance designated. Well, here there was, in terms of Tanzania's agreement to pay the family, there was. But a contract with the facts of our case, with actual past practice of making payments through a New York account in U.S. dollars, I think could support clause 2. If there are payments through a New York bank account, there's an act in the United States. It's not – we just need an act that's in connection with a commercial activity that causes direct effects here. And we've alleged all of those things. We've got an act. It's based upon Tanzania. It doesn't dispute. That's the gravamen of the suit. It's in connection with a commercial contract. The judgment expressly references that commercial contract. And it causes multiple direct effects here that together support a finding of direct effects. If you assume, just for the sake of argument, I think that the hypothetical breach of contract action that I've posited would not be litigable here, is there any reason to think that Congress would have made it easier – same facts except you litigate to judgment in Tanzania. Why would it be easier at the enforcement stage to bring that foreign-centered controversy into a U.S. court? Well, Your Honor, I think it's actually a matter of recognition. It's something that U.S. courts do all the time. We recognize judgments from other states, other countries. That is part of our – the comedy and respect that we give to other judgments. And there's no basis in the FSIA to say that Congress wouldn't allow that and that as long as we satisfy the jurisdictional stage, a showing of all three of those elements in Clause 3 or the two elements in Clause 2, then we have gotten past the jurisdictional stage and the – I understand that, but there are lots of cases in the context of direct merits litigation as opposed to enforcement litigation where the Supreme Court and our court has said you better – you need to be cautious and respectful of immunities and make sure that the predicate acts for invoking U.S. jurisdiction are at the core of the lawsuit. And I think the act, the FSIA, shows – really the concern is that we have a sufficient connection to the United States. And so in your hypothetical, if there's not a sufficient connection to the United States, well, then sovereign immunity would remain intact and that's the end of the story. But here we have a sufficient connection to the United States. We have acts – we have both acts in the United States. We have payment due to citizens of the United States. They are here. They've been demanding money since the beginning. And immediately, this is not kind of – it's not a situation where somebody just comes to the United States where it's a favorable forum. Okay. Thank you. Okay. Thank you. Mr. Martin. May it please the Court. Lawrence Martin on behalf of appellees that I'll refer to collectively as Tanzania for the sake of convenience. I want to start with something that Ms. Parenti just said, which was that the concern of the FSIA commercial activity is to provide a forum where there's a sufficient connection to the U.S. And in our view, that's not this case. There's no meaningful connection to the U.S. This is a foreign court judgment that grows out of contracts that were entirely between foreign entities that had no connection to the United States. There was nothing in the contract that contemplated any performance, let alone payment, in the U.S. What about the reference at JA-46 in the irrevocable agreement to which Tanzania acceded that it made a commitment to pay Mr. Golombia wherever and whenever applicable? Well, a couple of things about that. At a time when they knew he was living in the United States. Well, I don't think the record reflects that. In fact, that letter is addressed to Mr. Golombia and family at a Tanzania address. And the complaint alleges that Mr. Golombia spent the rest of his life trying to recover on the judgment in Tanzania. So I don't think that the statement in that undertaking, to pay wherever and whenever appropriate, can be read as sort of an explicit statement that payment in the U.S. is required or even contemplated. Moreover, as we've now heard, Appellant's principal argument is that this action is based on the entry of judgment. And so in that sense, the undertaking in the irrevocable agreement is not a fact without which plaintiffs would lose this judgment recognition action. I mean, the gravamen is the recognition of a judgment. And the underlying facts are not necessary to prevail. In the words of Oduyambo, it's not a fact without which plaintiffs or, excuse me, appellants would lose. In our mind, there are three principal reasons why the court, well, two principal reasons the court doesn't have jurisdiction over the case. And a third reason why even if the court did have jurisdiction, appellants should still lose. The jurisdictional reasons that we think the district court was correct is that the judgment on which appellants now rely is not an act in connection with a commercial activity of Tanzania. Moreover, we don't think there's a direct effect in the United States. And finally, we think their action is barred by the statute of limitations. With respect to the act in connection with, as we heard Appellant's core argument is that judgment is in connection with the underlying commercial activity. But in our view, the connection between those two things is too attenuated to give rise to jurisdiction. I think the Second Circuit has called for a narrow reading of in connection with. I'm not sure that it's necessary to characterize the reading that it gave it as narrow. In connection is obviously susceptible of a lot of different definitions, but among the ordinary meetings are in conjunction with or in the context of. And we think in the context of the FSAA, right in light of the case law, the legislative history, that means that the act in connection with the commercial activity, the act has to be part and parcel of the commercial activity. Well, I think it's certainly, there's certainly a connection between the two. I guess our argument is that based on the legislative history. And it's, I mean, it's a pretty tight connection, right? You litigate a commercial claim, you get a judgment on the claim. It's very different from, you know, you contract to go work in a hospital in Saudi Arabia. And lo and behold, for whatever reason, you end up being imprisoned, right? Right. But I think, Your Honor, the legislative history and the case law, I'm happy to describe, I think, call for a tighter connection than that. As I say, I think they call for a connection that I would call part and parcel of the same transaction. Right. But your theory is not just tight. Your theory is airtight, right? There would be no ability to enforce a judgment no matter how direct the effect in the U.S. Well, Your Honor, I guess I disagree that the connection is airtight. Suppose you had a crystal clear designation of a place of performance that would satisfy Volambia and so on. Your theory is too bad because this isn't a contract claim. It's an enforcement action, and the judgment is either too remote from the contract or is too sovereign as opposed to commercial, so too bad. Well, again, I don't think that's this case, Your Honor, but in answer to that hypothetical, I think the answer is yes. In a sense, too bad. If Congress wanted to create exception to sovereign immunity for judgment recognition actions, it could do that. It did that for arbitration awards, for example. And in the case of the arbitration exception, it specifically said that among the cases for which there are jurisdictions are cases that could otherwise have been brought under the FSA but for the agreement to arbitrate. So the scheme you're positing is Congress structures this exception so that, again, hypothetical case with a direct effect, the parties can litigate the underlying controversy in the U.S. because there's a direct effect. But if they litigate to judgment somewhere else, they can't enforce in a U.S. court. Doesn't that seem odd? Assuming there's a direct effect. Yes. Okay. I'm isolating your arguments on... No, I don't think that seems odd to me, to be honest with you. I mean, in that case, in that hypothetical, the plaintiff will have made a decision as to where they want to sue. If they had wanted to sue in the United States, they could have sued in the United States. But having made an election to sue in a foreign country, they need to be bound by the consequences of that decision. I mean, that seems perverse given that the overarching objective of the Foreign Sovereign Immunities Act is to respect the sovereignty of the various countries. And in a case in which the judgment creditor or the creditor decides to bring the suit within the system of that sovereign nation, it's further respecting its sovereignty. And to say that that, that basically the act was intended to force those direct effect cases into the United States on their merits, doesn't seem consistent with that. Again, Your Honor, I'm dealing with a hypothetical that Judge Cassas has raised. But I think that's very different from this case because you're talking about... It's very different because you have your second level of arguments on direct effect. Well, no, I don't... We're pressing you on your first set of arguments. If I may, I want to turn to that point, but I do want to address this in connection to the point because I think if you look at the Second Circuit's interpretation of the Garb case, the Ninth Circuit's interpretation in the Adler case, the Third Circuit's case, if you look at the House report at 19, it calls for a very tight connection, an airtight connection between the act and the commercial activity. The legislative history speaks about misrepresentations in connection with the commercial activity. Why is it enough that the judgment wouldn't exist but for the commercial activity? I mean, they couldn't imagine a tighter connection. It is part of it. I mean, if you ask anybody who is expecting to be paid for their services, they wouldn't be doing commercial activity if they thought they couldn't recover. It's all part of business. I understand that perspective, Your Honor, but I respectfully submit that it's not part of the same course of commercial dealing or particular transaction at issue, and that's the degree of closeness that I think the legislative history and the case law stands for. That said, I think Appellant's case also fails because there's no direct effect in the United States. As Your Honors have noted in your questioning, the case law of this court is quite restrictive in what constitutes and doesn't constitute a direct effect. Here, the judgment, which is the act upon which their claim reports to be based, doesn't explicitly contemplate performance in the United States. In fact, the 2001 Garnaschee Order, as Chief Judge Garland noted, called for performance in Dar es Salaam. So there's nothing that creates a direct effect within the meaning of this court's jurisprudence, and I think that follows not just from the Odhiambo case and others, but from first principles. I mean, in Woltover it says a direct effect is an immediate consequence. In the Prince case from this court, it talks about the effect following sort of without intervening event in a direct line. In here, there's nothing like that. Why shouldn't we, given our obligation to read the complaint liberally and the low burden on the plaintiffs in this context to plead, why shouldn't we, and the district court's failure really separately to look at the third prong, why shouldn't we remand for jurisdictional discovery to figure out where the payments were made, whether Tanzania was aware where Mr. Valhambia was living, when it agreed to pay directly to Valhambia all payments due and payable? Because there's absolutely nothing in the record to indicate that performance was necessarily contemplated in the United States. Not necessarily contemplated. I mean, like in Decepol, there were alternative performance, some of which could have been specific performance, some of which could have been money. In Woltover, there was an option of four different places of performance, one of which was the United States. So here it's only two. You have somebody who's a green card holder, presumably known to Tanzania as such, in the United States and is personally entitled to funds. So why shouldn't we just nail this down factually? Well, Your Honor, I think it's very different from Woltover because their plaintiff had the right to designate the place of performance, which included New York. So therefore plaintiff specifically had the right to say performance was due in New York. We have nothing like that here. We have something like it at JA 46, where the government agreed to pay Mr. Valhambia wherever and whenever applicable. So giving him a choice arguably. Again, I don't think that fact is one without which they would lose within the meaning of this Court's case law. I mean, the case is based on the judgment, and the elements of a judgment enforcement action don't require them to prove anything. I think you're confusing the way we analyze the first two prongs from the direct effect prong in terms of what has to be alleged. Okay. I take your point, Your Honor, but I think the fact remains that that letter is addressed to Mr. Valhambia and family in Tanzania, and I don't construe that language as specific enough to give rise to a direct effect within the meaning of the Court's jurisprudence. I don't understand how you distinguish the based upon commercial activity from the in connection with the commercial activity. It seems to me that your definition of in connection with is so narrow that it becomes almost indistinguishable from based upon, and those are clearly two different meanings within the statute. I, again, Your Honor, with great respect, this is not just our interpretation of in connection with. I think, as I said, this flows from the second. The Second Circuit doesn't say anything like that. The Second Circuit says there has to be a substantive connection or a causal link between them and the commercial activity. There's certainly a causal link between the commercial activity and the recognition judgment, otherwise there would not be a recognition judgment. Isn't that right? It is right, Your Honor. So then it satisfies the Second Circuit's test. I don't think so, because if you read the Second Circuit's opinion more fully. I have read it fully. No, no. Just for purposes of making it clear, Your Honor, I apologize. My point was simply that the Court acknowledges there that there is some connection between the act and the commercial activity, but that connection is as true as too attenuated to Second Circuit. But here it's causal. It's not attenuated. It's causal. You could not have recognition judgment without the commercial activity. And just the same in the Garb case in the Second Circuit, but for the expropriation you couldn't have that. No, but the expropriation happened after the commercial activity, right? In that case, as I understand it, the expropriation happened before the commercial activity. The allegation was there was an expropriation of property and that property was subsequently used in connection with commercial activities. So I'm not seeing the causal relationship between the two. In this case, it's the commercial activity that actually caused the recognition judgment. It's the breach of the contract. In what sense did the expropriation cause the commercial activity in the other case? Well, in the sense that before the expropriation there wouldn't have been the subsequent commercial activity. Well, that's not the point. But the gravamen, which is required by the but for, was the commercial activity which happened after the expropriation, not before. Well, I think. Here the gravamen is the thing that, the precise thing, the recognition judgment. I think the Third Circuit decision in the Adler case sort of has the inverse timeline. There you had a loan transaction concluded in the Netherlands. There was a subsequent case relating to the mismanagement of the property that was the subject of the loan transaction. And the Third Circuit there found there wasn't a close enough connection between the two. And in my view, Your Honor, respectfully, there is a causal connection there. But for the loan transaction, the mismanagement of the property wouldn't have occurred. And if I may just, I know I'm over time, but just because I apparently received a little additional time, may I just address very briefly the statute of limitations argument? No. No. The statute of limitations was not decided below, right? No. But the Court has. I understand. We've been getting off the briefs. But this is another ground that wasn't decided below. My guess is that if you lose, you'll have an opportunity to raise statute of limitations in the court of first instance. If I may, Your Honor, just for the record, we consider the record clear enough, as it is before you, that the process is separate. You said so in your brief. Thank you. Thank you, Your Honor. Thank you. May it please the Court? I just would like to initially correct a factual error. Counsel for Tanzania said that the irrevocable agreement was addressed to Mr. Balambia at a Tanzanian address. It was not. There is no address on it. It's an appendix at 46. But it was agreed and consented to in Tanzania and signed there by Mr. Balambia. Well, the actual document doesn't. I'm just looking at the document. I was looking for the same thing, and there's a note. He was in Balambia. Yes, he was. It does say that he was there. But it wasn't addressed to him, and we don't know where it was sent. I would also point out that. I was also confused by that statement. I think he's referring to instead to Exhibit D at JA-50, which is. . . It's a letter by the bank. Letter by the bank, correct. And I would also point out Tanzania states here that the judgment was, is not a fact without which we will lose our recognition action. And I would respectfully point the court to pages 20 to 21 of their brief where they do admit that the judgment is a fact without which we would lose our recognition action. It is basically the first element of a recognition action is that you have a judgment, and we have that. I would also. . . Addressing the questions about in connection with and how tightly Tanzania is requesting the court to tie the judgment to this in connection with language. If this isn't direct enough, if this isn't enough of a connection, I don't know what would be. Because the judgment expressly cites the 1985 contract, and it's based upon that. If you would focus just for a minute on giving your clearest statement of what you think constitutes the direct effect in the United States, that would be helpful. First and foremost, that money is owed to the Bolombias under the judgment. It is. . . And from the beginning, the money was owed to them here. They are demanding it here. Payments were made through New York Bank, and the payments are due in U.S. dollars. And when you say it's owed to the Bolombias in the United States, what is the basis for your in the United States part of that sentence? It feels to me rather cagey, if you don't mind, that you haven't alleged knowledge on the part of Tanzania. You haven't pointed to text that shows their contemplation of where the Bolombias are. You haven't identified that payments were received by the Bolombias from the New York Bank in the United States. So the question is, where's the barest allegation that money is owed to the Bolombias in the United States? We did allege in the complaint, Your Honor, that Tanzania knew from the beginning that the Bolombia family, they were here and they're demanding money here. So there is an allegation in the complaint. At the time, I mean, they obviously know they're here now. What do you think is the relevant time for purposes of that knowledge, and what are you alleging? Well, I think it's a continuum. I mean, certainly there are two judgments. So we don't have an allegation about exactly when knowledge was gained, but I would, you know, I think the fact that Tanzania agreed to pay Bolombia and family wherever and whenever applicable in the irrevocable agreement means they've agreed to pay wherever and whenever. And they, it was not, the Bolombia family was well known, and it was known, and our complaint alleges it was known that they were in the United States. And, in fact, payments were made through a United States bank account. So there really is no surprise. But even if knowledge was gained between the 91 judgment and the 2001 judgment, I mean, the fact of the matter is, and our allegations are sufficient, giving all reasonable inferences in favor of the allegations in the complaint, as this Court must on a motion to dismiss, they've alleged sufficient grounds that we've satisfied the elements of Clauses 3 and Clause 2. And I would also just address, excuse me, Your Honor. Did you have a question? No, I asked whether there were any further questions. There don't appear to be any. Okay. I have one more if the Court, one more point I just wanted to make about the arbitration exception. I think that's covered in the motion. Okay. All right. Thank you, Your Honor. All right. We'll take the matter under submission.
judges: Garland, Pillard, Katsas